IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| | * |
| DAN T. SIMMONS, *pro se*, | |
| | * |
| Plaintiff, | |
| | * |
| v. | CIVIL NO.: WDQ-08-3101 |
| | * |
| JOHNS HOPKINS UNIVERSITY, | |
| | * |
| Defendant. | |
| | * |

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Dan Simmons, *pro se*, sued Johns Hopkins University for violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623.  For the following reasons, Hopkins's motion for summary judgment will be granted.

I.   Background

Simmons, who is 65, holds an Associate's Degree in Engineering from Pennsylvania State University.[1]  Lisa Cohen Jones Aff., Ex. A4, Aug. 19, 2009.  From 1981 to 1992, he was Senior Financial Analyst at Lockheed Martin in Middle River, Maryland.  *Id.*  From 1992 to 1993, he was Cost Analyst at Black & Decker in Hampstead, Maryland.  *Id.*  From 1994 to 2006, he

---

[1] For the pending motion, Simmons's "evidence is to be believed, and all justifiable inferences are . . . drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

owned and operated Friendship, Inc., an Internet-based matchmaking service.  *Id*. ¶ 9, Ex. A4.

In the spring of 2007, Simmons applied for three budget analyst jobs in the Bloomberg School of Public Health at Hopkins ("School of Public Health").  *Id*. ¶¶ 8, 23.  Two of the jobs-- requisition numbers 27672 ("Job 1") and 28313 ("Job 2")--were in the Department of Human Nutrition; the third--number 28925 ("Job 3")--was in the Department of International Health.  *Id*. ¶¶ 3, 21-23.  Simmons interviewed for Jobs 1 and 2 on April 18, 2007. *Id*. ¶¶ 8-10.  He was not invited to interview for Job 3. *Id*. ¶ 23.  Simmons was not offered a job.  Dan T. Simmons Aff. ¶ 10, Sept. 10, 2009.  The successful candidates were 24, 34, and 40 years of age.  Cohen Jones Aff. ¶¶ 15, 20, 27.

A.  Jobs 1 and 2

Job 1:

> coordinates and participates in development of
> departmental and sponsored budgets.  Develops
> financial reports for fo[r]ecasting and results
> analysis.  Assists in financial studies regarding
> projected changes in revenues and expenditures.
> Administers revenue and expense budgets, including
> grants and contracts in post award period . . . .
> Coordinates and participates in the development of
> unrestricted funds budgets and research grants and
> contracts . . . . Ensures compliance with all relevant
> University and/or agency regulations and restrictions
> . . . . [and] Serves as liaison between the business
> office and unit areas.

*Id.*, Ex. A1 (Job Description).  The minimum qualifications for the job were: (1) a Bachelor's degree in accounting or a related field; (2) advanced spreadsheet knowledge; (3) proficiency with certain software; and (4) two years of related professional experience.  *Id*.  Significant professional experience could substitute for some of the educational requirements.  *Id*. Knowledge of Hopkins's accounting and budgeting practices was preferred.  *Id*.

Job 2 provides support for a human nutrition project in Zimbabwe.  Yvette Johnson-White Aff. ¶ 5, Aug. 4, 2009.  Job 2:

> work[s] with faculty and administrative staff in the compilation of information related to expenditures and revenue budgets, including grants, contracts, endowments, general funds, revenues and/or gift accounts . . . Assists in the development of business proposals and/or grant applications . . . . Ensures compliance with all relevant University and/or agency regulations and restrictions . . . . Facilitates travel, visa,  per diem arrangements for [students and faculty] working with ZVITAMBO[2] outside Zimbabwe. Facilities travel . . . of Zimbabwe staff when traveling to USA or other countries outside Zimbabwe . . . . Assists in preparation of donor reports [.]

Cohen Jones Aff., Ex. A1 (Job Description).  The minimum qualifications for Job 1 and Job 2 were the same, but Job 2 required no experience with Hopkins's accounting and budgeting

---

[2] ZVITAMBO means "Zimbabwe Vitamin A for Mothers and Babies." Def.'s Mot. Summ. J. 7.

practices.  *Id*.  A successful candidate would be subject to a pre-employment background check.  *Id*.

On April 18, 2007, Simmons interviewed for Jobs 1 and 2. *Id*.  *Id*. ¶¶ 8-10.  Before his first interview, Simmons authorized a pre-employment background check.  Compl. ¶ 26; Pl.'s Opp., Ex. F (Letter from Terri L. Turner, Associate General Counsel, Johns Hopkins University, to Carol M. Glace Investigator, Baltimore Community Relations Commission (Feb. 22, 2008)).  The form required Simmons's high school graduation date.  *Id*.  After Simmons completed the form, it was forwarded to Automatic Data Processing, a vendor that conducts background checks for Hopkins; neither interviewer saw the form.  *Id*.; Cohen Jones Aff. ¶ 28; Johnson-White Aff. ¶ 19.

Simmons was first interviewed by Lisa Cohen Jones, Senior Employment Specialist for the School of Public Health.  Simmons Aff. ¶ 6; Cohen Jones Aff. ¶ 8-10.  Cohen Jones was concerned that Simmons had no grant accounting experience and that his most relevant experience (analyst positions with Lockheed Martin and Black & Decker) ended in the early 1990s.  *Id*. ¶ 9.  She also noted that Simmons had difficulty focusing on and responding to her questions.  *Id*.

Simmons was also interviewed by Yvette Johnson-White, Senior Financial Manager for the School of Public Health.

4

Johnson-White Aff. ¶ 2.  Although Johnson-White found Simmons "interesting," she had reservations that he lacked experience in the nonprofit sector and had no recent relevant experience.  *Id.* ¶ 9.  In an April 20, 2007 email to Cohen Jones about Simmons, Johnson-White stated that she was "on the fence" about scheduling another interview because Simmons had worked in "for profit" organizations, which were "very different from nonprofit and academia."  Pl.'s Opp., Ex. A (Email from Yvette Johnson-White to Lisa Cohen Jones (Apr. 20, 2007)).

Simmons was very satisfied with his performance in the interview, and thought that Johnson-White was too.  Simmons Aff. ¶¶ 9-10.  He says that at the end of the interview, Johnson-White invited him to meet with Professor Keith West for a follow-up interview for Job 1.  *Id.* ¶ 9.  Johnson-White denies this.  Johnson-White Aff. ¶ 10.  She decided to speak to West, who ran the program that Job 1 would support, before scheduling a follow-up with Simmons.  *Id.* ¶¶ 9-10; Pl.'s Opp., Ex. A (Email from Yvette Johnson-White to Lisa Cohen Jones (Apr. 20, 2007)).

On April 24 or 25, 2007, West and Johnson-White met to discuss the candidates for Job 1; they decided not to invite Simmons for a second interview because his qualifications "did not match closely enough with the requirements of Job 1."  *Id.* ¶ 13.  West thought Simmons was disqualified because he lacked

familiarity with Hopkins's accounting software and experience in nonprofit or grant accounting, and it had been over 12 years since Simmons had done budget analysis that required reporting to supervisors and accountability for his work product.  Keith P. West, Jr. Aff. ¶ 12, July 31, 2009.

West, Johnson-White, and Cohen Jones found Joshua Walker the most qualified candidate for Job 1, and offered it to him. *Id.* ¶ 11; Johnson-White Aff. ¶ 15.  Walker was a 24-year-old health care graduate student at Hopkins.  *Id.*  He was considered the strongest candidate because he was familiar with the Hopkins SAP accounting system and grant reporting, and had recent experience as a budget analyst.  *Id.* ¶ 16; West Aff. ¶ 11.

The hiring decision for Job 2 was made by Cohen Jones, Johnson-White, and Dr. Jean Humphrey, the lead faculty member for the ZVITAMBO nutrition project.  Johnson-White Aff. ¶ 4. The successful candidate was Hibest Assefa, a 40 year-old Hopkins public health graduate student.  *Id.* ¶ 17.  Assefa had recently directed a Zimbabwe-based nutrition project for the University of California-San Francisco, and knew the grant management requirements of USAID, which funded the California and Hopkins projects.  *Id.* ¶ 18.  Humphrey was familiar with Assefa's work and had met her in Zimbabwe.  *Id.*

Cohen Jones, Johnson-White, and West did not know the candidates' ages when the hiring decisions were made. *Id*. ¶ 15, 17, 19; Cohen Jones Aff. ¶ 15, 20, 28; West Aff. ¶ 9.

B. Job 3

On May 3, 2007, Simmons applied for Job 3. Cohen Jones Aff. ¶ 23. Cohen Jones determined that Simmons did not meet the minimum qualifications for the job: (1) a Bachelor's degree with a concentration in finance, accounting, or related field, (2) knowledge of finance, reporting, tracking and accounting, (3) knowledge of Microsoft Office, Access, and SAP, (4) exceptional communications skills, and (4) two years of related professional financial experience and familiarity with grant budgets. Cohen Jones Aff. ¶ 23, Ex. A8. Cohen Jones did not forward Simmons's application because she knew from the April 18 interview that Simmons lacked a Bachelor's degree and familiarity with SAP and grant budgets. *Id*. ¶ 23.

The hiring decision for Job 3 was made by Cohen Jones and Brent Bell, a Financial Manager in the Department of International Health. *Id*. ¶ 26; Brent Bell Aff. ¶¶ 2, 9, Aug. 17, 2009. Nichole Zivuku, who was then 34, was offered the job. *Id*. ¶ 13. Bell cited Zivuku's Bachelor's degree in Accounting and familiarity with accounting systems similar to the SAP software used at Hopkins as the primary reasons she was hired.

7

*Id.* ¶ 14, 15.  Bell did not know Zivuku's age when she was
hired.  *Id.* ¶ 21.  Because Cohen Jones did not forward Simmons's
application, Bell knew nothing about Simmons when the decision
was made.  *Id.* ¶ 8, 9.

C.  Procedural Background

On December 20, 2007, Simmons filed a discrimination charge
with the Equal Employment Opportunity Commission.  Compl. ¶ 1 &
Ex. A.  On August 19, 2007, Simmons was issued a right to sue
letter, *id.*, Ex. A, and on November 18, 2008, filed this suit,
Paper No. 1.  On August 21, 2009, Hopkins moved for summary
judgment.  Paper No. 28.

II.  Analysis

A.  Standard of Review

Under Rule 56(c), summary judgment "should be rendered if
the pleadings, the discovery and disclosure materials on file,
and any affidavits show that there is no genuine dispute as to
any material fact and that the movant is entitled to judgment as
a matter of law." Fed. R. Civ. P. 56(c).  In considering a
motion for summary judgment, "the judge's function is not . . .
to weigh the evidence and determine the truth of the matter but
to determine whether there is a genuine issue for trial."
*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  A
dispute about a material fact is genuine "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

B. Discrimination under the ADEA

Simmons contends that Hopkins did not hire him because of his age. Under 29 U.S.C. § 623, it is unlawful for an employer to fail or refuse to hire any individual because of his age. 29 U.S.C. § 623(a)(1) (2006). Simmons may prove a violation of ADEA by circumstantial evidence[3] under the three-step scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To prove a *prima facie* case of discrimination, he must show that: (1) he was at least 40 years old; (2) he applied and was qualified for an open position; (3) he was rejected despite his

---

[3] A plaintiff may rely upon direct or circumstantial evidence to prove a claim under ADEA. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). Simmons relies solely on circumstantial evidence.

qualifications; and (4) the position was filled by a
substantially younger, similarly qualified applicant.  *See id.*;
*Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).  Hopkins
concedes that Simmons has established a *prima facie* case of
discrimination.  Thus, Hopkins must present a legitimate,
nondiscriminatory reason for its decision not to hire him.
*Laber*, 438 F.3d at 430.  Its reason for not hiring Simmons is
that it hired more qualified candidates for each of the three
budget analyst positions.

Simmons responds with three arguments that this reason is
pretextual.  First, Simmons argues that he was more qualified
than Walker, who got Job 1; thus, the hiring decision was based
on age.[4]  Second, Simmons contends that his lack of nonprofit or
academic experience is pretextual because the concerns arose
only after his age was evident at the interview.  Third, Simmons
argues that Johnson-White's offer of a second interview was
overridden by someone in Human Resources because of his age.

Simmons offers no evidence that any decisionmaker knew his
age; he merely speculates that his age was known because (1) he
looks over 50 and (2) wrote his high school graduation date on
the background check form he completed before the April 18

---

[4] Simmons does not argue that he was more qualified than Assefa,
who got Job 2, or Zivuku, who got Job 3.

interview.  Cohen Jones, Johnson-White, West, and Bell, stated in their affidavits that they did not see this form, or otherwise learn Simmons's age.  Simmons offers no evidence to the contrary.

1.  Simmons and Walker's Qualifications

Hopkins considered Walker the stronger candidate because Walker was familiar with the SAP accounting system and Hopkins's grant reporting, and had recent experience as a budget analyst. Johnson-White Aff. ¶ 16; West Aff. ¶ 11.  Simmons contends that his 12 years of budget analyst experience dwarf Walker's 21 months of comparable experience, and that Walker's familiarity with Hopkins's grant reporting was questionable because Walker only worked with grants was during one class at Hopkins.  Pl.'s Opp. 5.  Thus, Simmons argues, Hopkins understates his qualifications and overstates Walker's.

A substantial difference between the qualifications of the plaintiff and the person hired may be evidence of pretext when the proffered reason for not hiring the plaintiff is the selectee's greater qualifications.  *See, e.g.*, *Ham v. Wash. Suburban Sanitary Comm'n*, 158 Fed. Appx. 457, 464 (4th Cir. 2005).  That Simmons considers himself more qualified than Walker does not show pretext; "it is the perception of the decision maker which is relevant, not the self-assessment of the

plaintiff." *Evans v. Techs. Applications & Serv. Co.*, 328 F.3d 145, 149 (4th Cir. 2003).

Hopkins thought that Walker's recent experience and familiarity with SAP and Hopkins's grant reporting were more valuable than Simmons's longer, but less recent, experience as a budget analyst.  Further, it is undisputed that Walker met the qualifications stated in the job description, and, unlike Simmons, had the "preferred qualification" of experience with Hopkins's accounting system.  Simmons has not proffered a basis on which a reasonable jury could infer that Hopkins's choice was based on age.

2.  Concerns about Simmons's Inexperience in Nonprofit and Academic Organizations

Simmons argues that his lack of nonprofit experience is pretextual.  Simmons notes that his lack of nonprofit experience was evident from his application and resume, and his qualifications were sufficient for him to be invited for an interview.  Only after the decisionmakers learned his age--from either the background check form or his appearance--did they become concerned about his experience.  Simmons argues that the actual concerns were about his age.

Simmons's speculation would not allow a jury to infer that the decisionmakers' concerns were pretextual.

12

       3.    Johnson-White's Promise to Schedule a Second Interview with West

Simmons contends that Johnson-White did not schedule the follow-up interview with West that she had promised.  Simmons believes that the interview was not scheduled because Johnson-White's supervisors in the Human Resources department thought Simmons was too old for the jobs.  Cherita Hobbs, the head of Human Resources for the School of Public Health, stated in her affidavit that she did not overrule or otherwise interfere with the decisions regarding Simmons, and that she was unaware of any other Hopkins employee's having done so.  Cherita Hobbs Aff. ¶¶ 5-7.  Simmons believes that Johnson-White was overridden because his interview with her had gone very well, but he has no evidence.  Because Simmons has no evidence contradicting Hobbs's affidavit, he has presented no issue of fact for trial.

As Simmons has no evidence for the inference that Hopkins did not hire him because of his age, its motion for summary judgment will be granted.


November 12, 2009                  _____/s/_____
Date                            William D. Quarles, Jr.
                                United States District Judge